UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-CV-22957-KING

CODA ROOFING, INC.,

      Plaintiff/Counterclaim
      Defendant,

v.

GEMINI INSURANCE COMPANY,

      Defendant/Counterclaim
      Plaintiff.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon cross-motions for summary judgment, both of which were filed on September 13, 2010, by Defendant/Counter-Plaintiff (DE #40) and by Plaintiff/Counter-Defendant (DE #44).[1] Notwithstanding its provincial procedural posture, this matter involves some very heated issues: namely, the accidental burning of a building from the use of a torch by Plaintiff, a roofing company, while repairing a roof; and the resulting legal conflagration, as Plaintiff sought without success to collect upon its insurance contract with Defendant.

In short, Defendant seeks to avoid its obligations under the insurance contract and to reform the finalized contract agreed upon by the parties. Defendant's basis for reformation is its claim that it had mistakenly issued the contract without a central and applicable exclusion. Under the terms of that exclusion, Defendant would not have been

---

[1] Because the parties have filed cross-motions for summary judgment and the Court finds there are no material issues of disputed facts, this matter is ripe for consideration.

responsible for damage resulting from the use of a torch in working with a certain type of roofing material: modified bitumen roofing material, to be precise.

Plaintiff, within the time period of its insurance coverage, used a torch to work with modified bitumen material on a building in Miami, which all parties admit led to the fire noted above. Defendant denied Plaintiff's resulting insurance claim, maintaining that the torch-down exclusion, although admittedly not in the contract, nonetheless excluded coverage.

Defendant now asks the Court to rewrite the contract to include the exclusion and relieve it from liability. After careful consideration, the Court determines that reformation of the insurance contract is inappropriate and that Plaintiff's motion must therefore be granted.

**I. Factual Background**

The seeds for this dispute were sown back in late 2007, when Plaintiff, a Miami roofing corporation, sought new liability insurance for its business. Plaintiff contacted a retail insurance broker, National Risk Experts, LLC, to determine whether there was any commercial general liability insurance that was more affordable than the insurance then being paid for by Plaintiff, which was provided by Hermitage Insurance Company. *Ritter Dep.* 19/20-25; *Lozan Dep.* 10, 14. It is undisputed that Plaintiff's insurance policy with Hermitage contained no exclusion for use of a torch in the performance of roofing work. *Buck Dep.* 82/15 – 84/18.

An agent for National Risk, Dawn Ritter, contacted an agent for Atlantic Risk Specialties, Inc. ("ARSI") to inquire whether ARSI wrote roofing contractor risks, which it did. *Ritter Dep.* 24/7-25, 25/9-12; *Dumont Dep.* 5-7. ARSI was a wholesale broker for

Vela Insurance Services, which was itself an exclusive underwriter for Defendant. *Maruszak Dep.* 8/8-19. ARSI subsequently provided National Risk with a general "Accord" application and a "CoverX supplemental" application. *Ritter Dep.* 25/13-15; *Dumont Dep.* 5-7. Plaintiff completed the applications and returned them to National Risk, who, through ARSI, provided them to Vela, the authorized underwriter for Defendant. *Ritter Dep.* 84/24-85/2.

Upon receipt of Plaintiff's applications, ARSI prepared a quote on Vela's behalf, although Vela did not communicate directly with either National Risk or Plaintiff. *Ritter Dep.* 78/5-7; *Maruszak Dep.* 167/12-14. According to National Risk representative Dawn Ritter, at the time she reviewed the quote, there was no torch-down exclusion provision.[2] *Ritter Dep.* 41/2-25, 42/1-14, 44/7-13, 44/19-25, 45/1-2. The quote prepared by ARSI was conditional in the sense that a supplemental application still needed to be completed and reviewed by Vela, and there was additional information needed from Plaintiff regarding its recent loss history. *Ritter Dep.* 81/11-25; *Buck Dep.* 144/15-20; *Maruszak Aff.* ¶12.

The parties dispute whether a torch-down exclusion was intended to be included in the final policy prepared for signature and bound by Defendant. Plaintiff notes that, not only did National Risk not have any discussions regarding the torch-down exclusion with Vela or Defendant, *Ritter Dep.* 88/1-8, 92/2-25, 91/1-6, if such discussions had been held Plaintiff never would have agreed to purchase insurance from Defendant. *Lozano Dep.* 60/16-24. Defendant counters that its underwriter, Vela, would not have agreed to a

---

[2] Plaintiff argues that, if there had been such a provision, Ms. Ritter would not have chosen Defendant as an insurance provider, since she understood that there was no torch-down exclusion in the insurance previously provided by Hermitage. (DE #45 at 2). The Court need not concern itself with such speculation, however, as the contract speaks for itself.

policy provided by Defendant that did not include a torch-down exclusion, *Maruszak Aff.* ¶7, and that the torch-down exclusion would not have been omitted even for a larger insurance premium. *Maruszak Aff.* ¶¶6-9. Indeed, Defendant claims that the torch-down exclusion was included in the conditional quote provided to Defendant, but that the exclusion did not find its way into the finalized, signed, and bound insurance contract because of two separate omissions: one by Ms. Ritter, who Defendant claims was acting not as Defendant's agent but as Plaintiff's, *Buck Dep.* 27-29, 43-45; and another caused by "clerical error" on the part of one of its own underwriting assistants, Christine Hertl, who did not compile the allegedly necessary information to be bound because of computer peccadilloes of which she was unaware, *Hertl Aff.* ¶¶ 1-14.

Regardless, it is undisputed that eventually the parties entered into a bound insurance contract – effective December 7, 2007 through December 7, 2008 – and that the insurance contract contained no torch-down exclusion. (DE #41 at 1). Although there was communication between the parties subsequent to the initiation of the insurance contract, there was never any discussion regarding a torch-down exclusion from the time the contract was signed to the time the fire occurred. *Mulrane Aff.* ¶19.

On September 20, 2008, during the duration of the insurance contract provided by Defendant, Plaintiff's employees were repairing a leaky roof on a building located in Miami, Florida. This work involved the use of a torch on the roof, which was composed of modified bitumen roofing material. *Holquin Dep.* 6; *Diaz Dep.* 19. While using the torch, Plaintiff's employee, Marcos Holquin, accidentally caused a fire by torching a section of the roof which contained plywood. *Diaz Dep.* 16-17. This accident caused substantial damage to both the building and its occupant.

4

There is no dispute that Plaintiff complied with the reporting requirements of Defendant's insurance policy subsequent to this accident. While there is some dispute regarding Defendant's treatment of the resulting claim,[3] ultimately Defendant denied Plaintiff's claim on the basis that the insurance contract contained a torch-down exclusion which had mistakenly been omitted from the signed and bound insurance contract. Defendant informed Plaintiff that it was unilaterally reforming the insurance contract to include the torch-down exclusion which it claimed had been mistakenly omitted. *Mulrane Ex.* E at 18-19; *Eaton Ex.* S.

This lawsuit followed. It was initiated on September 22, 2009, when Plaintiff filed suit in state court against Defendant. (DE #1). In its Complaint, Plaintiff stated two causes of action: 1) breach of contract; and 2) breach of fiduciary duty and implied duty of good faith. Defendant subsequently removed this action on October 1, 2009 (DE #1) and filed a Counterclaim against Plaintiff (DE #8) on October 19, 2009, which sought reformation of the insurance contract and declaratory relief. The parties have now filed cross-motions for summary judgment and the matter is therefore ripe for consideration.

## II. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to

---

[3] Plaintiff states that Defendant acted in bad faith in refusing coverage under the insurance contract. In support, Plaintiff notes that its claim was originally accepted by Defendant via its claims adjuster, Karen Eaton, who wrote that there "[a]ppears to be no coverage problems, no exclusions to preclude coverage. $1 mil coverage." *Anderson Dep.* 17/17-23.

find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party – here, both Plaintiff and Defendant – bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

Where, as here, the opposing parties have submitted cross-motions for summary judgment, the court need not decide in favor of one party or the other. *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (noting that cross-motions for summary judgment need not result in the granting of summary judgment). Instead, the court must

evaluate each motion on its own merits, just as when only one party moves for summary judgment. *See id.* In other words, rejecting one cross-motion does not mean that the other must be granted.

### III. Discussion

Defendant argues in its motion that reformation of the insurance contract to include a torch-down exclusion is appropriate under Florida law. According to Defendant, the bound and signed insurance contract does not reflect the mutual agreement of the parties. Instead, it claims that there was a mutual mistake regarding the inclusion of the torch-down provision. It is undisputed that Florida law permits courts to reform a contract to reflect the mutual intent of both parties. *Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1369 (Fla. 1987); *Goodall v. Whispering Woods Center, LLC*, 990 So. 2d 695 (Fla. 4th DCA 2008) (noting courts do not alter the agreement of the parties, but instead reform the contract to reflect that agreement accurately). However, as succinctly stated by the Florida Supreme Court, such reformation is only appropriate upon a showing "that the parties agreed on one thing and when they put it in the contract they said something different." *Blumberg v. American Fire & Cas. Co.*, 51 So.2d 182, 184 (Fla.1951).

Plaintiff counters that Defendant cannot mount such a showing where, as here, there was no mistake on the part of Plaintiff regarding the torch-down exclusion. *Cf. Continental Cas. Co. v. City of Ocala*, 127 So. 851 (Fla. 1930). Plaintiff's evidence demonstrates that Defendant never communicated with Plaintiff regarding any torch-down exclusion. Indeed, aside from one piece of evidence of indeterminate value,[4] there

---

[4] The piece of evidence pertains to whether Defendant ever communicated about the torch-down exclusion with National Risk. According to National Risk's representative, Ms. Ritter, there was no such

7

is no indication that Defendant ever mentioned the torch-down exclusion to anyone. Certainly there was never any negotiation between Defendant and Plaintiff regarding such an exclusion. Without such negotiation or acceptance of Defendant's exclusion, Plaintiff argues reformation is inappropriate. *Accord Mustelier v. Consolidated Mut. Ins. Co.*, 296 So. 2d 634 (Fla. 3d DCA 1974) (reversing trial court order of insurance reformation where "the record is devoid of any evidence that the [insured] ever had any knowledge of the limitation"). In fact, Plaintiff now states that it would have rejected any insurance contract including such a provision.

As an initial matter, there is no doubt that interpreting a contract is a question of law rather than a question of fact. *Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc.*, 874 So. 2d 26, 29 (Fla. 2d DCA 2004). In interpreting a contract, a court must be mindful of certain contract principles. For the purposes of this matter, the relevant principles include the following: merger, which holds that "ordinarily, representations and negotiations which precede and accompany the making of contracts are presumed to have merged into the final written contract," *Bleemer v. Kennan Motors, Inc.*, 367 So. 2d 1036, 1038 (Fla. 3d DCA 1979); and the parole evidence rule, which holds that any evidence that would contradict the construction of a written contract is inadmissible, *Lemon v. Aspen Emerald Lake Assocs., Ltd.*, 446 So. 2d 177, 180 (Fla. 5th DCA 1984). Assuming there are no material issues of genuine fact, this Court may utilize these principles of contract interpretation in deciding the matters raised by the parties' cross-motions for summary judgment.

---

communication. *Ritter Dep.* 41/2-25, 42/1-14, 44/7-13, 44/19-25, 45/1-2. Defendant disagrees and claims that a notation was included on its conditional quote to National Risk, which read "VE 02 21 02 07 Specified Operations Exclusion Torch Down Roofing." While there is some dispute regarding the precise wording of the conditional quote as produced by Defendant, there is no doubt that Defendant never discussed the notation with, or explained its meaning to, Plaintiff.

Here, there are no genuine issues of material fact preventing summary judgment. Indeed, the following undisputed facts are the only ones truly necessary to denying contract reformation on Defendant's behalf and instead finding in favor of Plaintiff.

1) Plaintiff, desirous of finding a new insurance policy, contacted a retail insurance broker to determine whether there was suitable commercial insurance available. That retail broker was National Risk.
2) National Risk was an intermediary between Plaintiff and Defendant in their discussions regarding insurance.
3) Defendant has provided no evidence to sustain its assertion that Plaintiff had knowledge of Defendant's desire to include a torch-down exclusion in the insurance contract, nor has Defendant provided any evidence to demonstrate that Plaintiff knew of Defendant's unwillingness to insure in the absence of a torch-down exclusion.
4) On or around December 7, 2007, the parties entered into an insurance contract which required Defendant to insure Plaintiff in the event of loss.
5) There was no torch-down exclusion in the insurance contract between the parties.
6) On September 22, 2007, an insurable event occurred that fell within the coverage provided by the contract signed by the parties.

In light of these undisputed facts, it is evident that Defendant has breached its insurance contract with Plaintiff by refusing to provide the agreed-upon coverage. The insurance contract between the parties is clear and unambiguous regarding each party's duties and obligations. Specifically, the insurance contract negotiated and entered into between Plaintiff and Defendant makes no reference to a torch-down exclusion. As such, the parole evidence rule and the doctrine of merger prevent consideration of Defendant's circumstantial and increasingly irrelevant evidence regarding Defendant's intention to include such a provision.[5] Underlying this finding is the clear record evidence showing that Plaintiff never received any indication that Defendant intended a torch-down

---

[5] For example, Defendant claims that the price of the insurance premium issued to Plaintiff was so low that Plaintiff should have been aware of a discrepancy. (DE #41 at 7). Not only is such an argument irrelevant to contract interpretation, the logic of such an argument is certainly in doubt.

exclusion to be included in the insurance contract. As such, it logically follows that Plaintiff, never having been told of the torch-down exclusion, could not have agreed to it. Without such agreement, there was no mutual mistake and reformation of the insurance contract is therefore inappropriate. *Accord Mustelier*, 296 So. 2d at 636; *Threadgill*, 729 So. 2d at 477-79 (refusing to reform insurance contract where there was only unilateral mistake by the insurer).

Insurance companies, like insured individuals, are bound by the contracts they enter. Indeed, it is black-letter Florida law that "an insurer, as the writer of an insurance policy, is bound by the language of the policy." *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997). Insurance companies collect substantial premiums – the extent of which is determined by insurance contracts as they are written – from their insured. It is only fair and equitable that insurance companies be required to honor their obligations in the event of an accident or event that is specifically contemplated by the insurance contract. Here, there is no doubt that such an insurable event occurred. Nor is there any doubt that the insurable event was covered by the insurance contract between Plaintiff and Defendant. As such, Defendant cannot be permitted to reform a contract that was clear and explicit regarding the parties' obligations to add conditions to the contract after the fact because of a "clerical errors." *Sea-Land Serv., Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1262 (S.D. Fla. 1999) (citing *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)) ("A party's secret hopes and wishes count for nothing because the status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves.") (internal quotation omitted).

**IV.     Conclusion**

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Plaintiff's Motion for Summary Judgment (DE #44) be, and the same is, hereby **GRANTED** as to liability.

2. Trial on the issue of damages will held as previously set by this Court's Scheduling Order (DE #34) of July 28, 2010 on the two-week calendar commencing January 10, 2011.

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 20th day of September, 2010.

_James Lawrence King_
Honorable James Lawrence King
United States District Judge

cc:
**Counsel for Plaintiff/Counter Defendant**
**Robert Nelson Pelier**
1431 Ponce de Leon Boulevard
Coral Gables, FL 33134
305-529-9199
Fax: 529-9290
Email: rpelier@pelierlaw.com

**G. Bartram Billbrough**
Billbrough & Marks
100 Almeria Avenue
Suite 320
Coral Gables, FL 33134
305-442-2701
Fax: 442-2801
Email: BBillbrough@attyfla.com

**Counsel for Defendant/Counter-Plaintiff**
**Bradley Steven Fischer**
Lewis Brisbois Bisgaard & Smith
200 Las Olas Circle
200 SW 1st Avenue - Suite 910
Fort Lauderdale, FL 33301
954-728-1280
Fax: 945-728-1282
Email: fischer@lbbslaw.com

**George J. Manos**
Lewis Brisbois Brisgaard & Smith LLP
550 W Adams Street, Suite 300
Chicago, IL 60661
312-345-1718
Fax: 312-345-1778
Email: gmanos@lbbslaw.com

**Jeffrey A. Goldwater**
Lewis Brisbois Brisgaard & Smith LLP
550 W Adams Street
Suite 300
Chicago, IL 60661
312-345-1718
Fax: 312-345-1778
Email: jgoldwater@lbbslaw.com

**Mark A. Kirsch**
Lewis Brisbois Bisgaard & Smith, LLP
200 SW 1st Avenue, Ste. #910
Ft. Lauderdale, FL 33301
954-728-1280
Fax: 954-728-1282
Email: kirsch@lbbslaw.com

**Robert A. Chaney**
Lewis Brisbois Brisgaard & Smith LLP
550 W Adams Street
Suite 300
Chicago, IL 60661
312-345-1718
Fax: 312-345-1778
Email: rchaney@lbbslaw.com 305-377-3770